## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Christopher Lollie, | Case No. 14-cv-4784 (SRN/HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Officer Michael Johnson, Officer Lori Hayne, Officer Bruce Schmidt, *both individually and in their official capacities as police officers for the City of St. Paul*, and the City of St. Paul, | |
| Defendants. | |

Andrew M. Irlbeck and Paul Applebaum, Applebaum Law Firm, 332 Minnesota Street, Suite W-1610, St. Paul, MN 55101, for Plaintiff.

Judith A. Hanson, St. Paul City Attorney, 15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on Plaintiff's Objections [Doc. No. 17] to United States Magistrate Judge Hildy Bowbeer's April 7, 2015, Order [Doc. No. 16].  Judge Bowbeer denied Plaintiff's Motion to Amend Complaint [Doc. No. 7] because Plaintiff's proposed Monell claim would be futile.  (See MJ Order at 11 [Doc. No. 16].)  For the following reasons, the Court finds that the magistrate judge's order was correctly decided, overrules Plaintiff's Objections, and denies Plaintiff's Motion.

II.    **BACKGROUND**

In October 2014, Plaintiff Christopher Lollie filed an action in state court against the City of St. Paul, and Officers Michael Johnson, Bruce Schmidt, and Lori Hayne, individually and in their official capacities as police officers for the City of St. Paul.  (See generally Notice of Removal, Ex. A "State Court Summons and Complaint" [Doc. No. 1-1].)  Plaintiff alleges that on January 31, 2014, Defendants violated his "clearly established rights under the Constitution of the United States, federal statutes, and Minnesota's common law."  (See id. "State Court Complaint" at 1.)  Specifically, Plaintiff alleges that Defendants are liable for (1) excessive force in violation of 42 U.S.C. § 1983; (2) false arrest in violation of 42 U.S.C. § 1983; (3) an unreasonable Terry stop in violation of 42 U.S.C. § 1983; (4) battery; and (5) false imprisonment.  (See Pl.'s Mem. in Supp. of Mot. to Am. Compl. at 1 [Doc. No. 9].)  On November 19, 2014, Defendants removed this matter to federal court.  (See Notice of Removal [Doc. No. 1].)

On March 2, 2015, Plaintiff timely filed a Motion to Amend Complaint [Doc. No. 7].  Specifically, Plaintiff sought to add a Monell claim against the City of St. Paul.  (See Pl.'s Mem. in Supp. of Mot. to Am.Compl. at 1 [Doc. No. 9].)  Under Monell v. Department of Social Services of City of New York, a city may be held liable for constitutional torts of individual officers where an official policy or custom of the municipality is the moving force behind the officers' constitutional violations.  See 436 U.S. 658, 690–95 (1978).

Plaintiff proposes the following amendments in support of his Monell claim:

- "The individually named Defendant Officers were acting pursuant to a policy, custom or practice of Defendant City of St. Paul of deliberate indifference towards the constitutional rights of civilians, and towards the violations of such rights by its officers.  By failing to adequately investigate allegations of wrongdoing, and discipline the culpable officers, the City adopted a policy of deliberate indifference to the constitutional rights of individuals in its jurisdiction.  This *de facto* policy was in effect on the [sic] January 31, 2014."  (See Irlbeck Aff., Ex. 1, "Proposed First Am. Compl." ¶ 22 [Doc. No. 10-1].)

- "Furthermore, Defendant City of St. Paul, through its final policymakers – namely the Mayor and Chief of Police – ratified the unconstitutional conduct of the individual officers in this case by exonerating them of all wrongdoing in the Internal Affairs investigation, and holding press conferences to declare the treatment of Mr. Lollie legal, and in accord with City/Departmental policy."  (Id. ¶ 23.)

- "This policy of deliberate indifference, inaction, and ratification by final policymaker(s) was the moving force behind the individual constitutional violations in this matter, and as such the City is liable under Monell."  (Id. ¶ 24.)

- "The City of St. Paul had and continues to have a policy, custom or practice of deliberate indifference towards the violations of those rights by its officers.  The City also has a policy of ratifying and thereby condoning the unconstitutional conduct of its officers."  (Id. ¶ 31.)

- "The Defendant officers in this case were acting pursuant to this policy, and their actions were in fact ratified by the City after the incident, thus making the policy the moving force behind the constitutional violations in this particular case.  The City is therefore liable for the violations of Mr. Lollie's constitutional rights on January 31, 2014."  (Id. ¶ 32.)

Defendants filed a memorandum in opposition to Plaintiff's motion, contending that Lollie's proposed amendments were futile.  (See Defs.' Mem. in Opp'n to Pl.'s Mot. at 2 [Doc. No. 12].)  Magistrate Judge Bowbeer agreed with Defendants and denied Plaintiff's motion.  (See MJ Order at 11 [Doc. No. 16].)

Plaintiff filed his Objections to the magistrate judge's order on April 21, 2015 [Doc. No. 17].  Lollie argues that he pled sufficiently specific facts in his Proposed

Amended Complaint to survive a Motion to Dismiss.  Specifically, Plaintiff contends that he sufficiently alleged that "an unwritten, *de facto* policy of deliberate indifference towards constitutional violations existed within the St. Paul Police Department and the City of St. Paul at the time of the incident in question, and that the individual Defendants were acting pursuant to that policy."  (See Pl.'s Obj. at 3 [Doc. No. 17].)  Plaintiff explains that the City's ongoing failure to investigate constitutional violations, and discipline culpable officers prior to the incident, serves as sufficient evidence of an unwritten municipal policy.  (See id. at 4.)  He also argues that he sufficiently alleged a Monell claim based on a post-incident ratification theory.  (See id. at 8.)  Additionally, Plaintiff argues that the Court should permit the amendments to his Complaint because his Monell claim would not unduly prejudice Defendants in this case, and the claim was not motivated by bad faith.  (See id. at 8–10.)  Defendants filed their response to Plaintiff's Objections on May 5, 2015 [Doc. No. 18].

## III.    DISCUSSION

### A.  Standard of Review

A district court must review a magistrate judge's order, denying a motion to amend as futile, de novo.  See Magee v. Trustees of the Hamline Univ., Minn., 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013) aff'd sub nom. Magee v. Trustees of Hamline Univ., Minn., 747 F.3d 532 (8th Cir. 2014); Am. Ins. Co. v. St. Jude Med., Inc., 597 F. Supp. 2d 973, 977 (D. Minn. 2009) (citing Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. L.R. 72.2(a)); cf. United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269

4

F.3d 932, 936 (8th Cir. 2001) (explaining that a district court's denial of leave to amend based on futility is reviewed de novo on appeal).

Pursuant to Federal Rule of Civil Procedure 15, "a party may amend its pleadings only with the opposing party's written consent *or* the court's leave." See Fed. R. Civ. P. 15(a)(2) (emphasis added). "But parties do not have an absolute right to amend their pleadings, even under this liberal standard." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008) (citing United States ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005)). For instance, the Court may deny leave to amend "where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotations and citations omitted). If a court denies leave on the basis of futility, "it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." See Cornelia I. Croswell GST Trust v. Possis Medical, Inc., 519 F.3d 778, 782 (8th Cir. 2008); see also Selmer v. Wilms, No. 13-cv-3283 (JNE/LIB), 2014 WL 3845779, at *2 (D. Minn. Aug. 5, 2014) (stating that "a party may successfully challenge a motion to amend pleadings on grounds of futility if the claims *created by the amendment* would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted").

5

In order to survive a Rule 12(b)(6) motion to dismiss, for failure to state a claim upon which relief can be granted, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556. When evaluating a motion to dismiss, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

### B. Analysis

As the Court noted above, a municipality may be held liable for the unconstitutional acts of its employees only when (1) a municipal policy or custom exists, and (2) that policy or custom was the "moving force" behind the constitutional violation(s). See Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing Monell, 436 U.S. at 694; Board of Comm'rs v. Brown, 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force"

requirement)).  Thus, to state a plausible <u>Monell</u> claim in his proposed First Amended Complaint, Plaintiff must sufficiently allege that Defendants are liable under this standard.  Based on the reasoning set forth below, the Court finds that Plaintiff fails to do so.

### 1.  Unwritten Policy

First, Lollie argues that although his allegations sufficiently state that the City of St. Paul had an "unwritten policy" of deliberate indifference towards constitutional violations, Magistrate Judge Bowbeer "misapprehended the nature of <u>Monell</u> and its progeny, and [erroneously] found that all allegations of unwritten policies are insufficient to plead a <u>Monell</u> claim."  (<u>See</u> Pl.'s Obj. at 4 [Doc. No. 17]) (citing MJ Order at 6 n.1 [Doc. No. 16]).  Plaintiff misstates the magistrate judge's finding.

Citing <u>Davidson v. Advanced Auto Parts Locator</u>, No. 406CV00607-ERW, 2007 WL 2317526, at *8–9 (E.D. Mo. Aug. 9, 2007) and <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 536 (8th Cir. 1999), Magistrate Judge Bowbeer explained that "it appears that where an 'unwritten policy' has been alleged . . . courts have assessed the complaint against the requirements for alleging a municipal custom."  (<u>See</u> MJ Order at 6 n.1 [Doc. No. 16].)  Thus, Magistrate Judge Bowbeer did not conclude that allegations of an unwritten policy are uniformly insufficient to plead a <u>Monell</u> claim.  Rather, she found that allegations of unwritten policies must be analyzed under the <u>Monell</u> standard used to analyze the sufficiency of allegations of a municipal custom.

Although Lollie is correct that "<u>Davidson</u> [and <u>Johnson</u>] do[] not state that an unwritten policy can never give rise to municipal liability," (<u>see</u> Pl.'s Obj. at 5 [Doc. No.

17]), the magistrate judge did not cite <u>Davidson</u> or <u>Johnson</u> for that principle.  In

<u>Davidson</u>, the Missouri district court explained that "[a] policy is generally considered a

*written* policy by the municipality, whereas a custom is an unconstitutional action by a

municipality which 'has not received formal approval through the body's official

decisionmaking.'"  See <u>Davidson</u>, 2007 WL 2317526, at *8 (emphasis added) (quoting

<u>Monell</u>, 436 U.S. at 691).  In <u>Johnson</u>, the Eighth Circuit similarly distinguished official

"polic[ies]" from municipal "custom[s]."  See <u>Johnson</u>, 172 F.3d at 536.  Thus, both

courts held that while a "policy" is an official written principle or procedure, a "custom"

is an unwritten principle or procedure.  Therefore, insofar as Plaintiff alleges that the City

of St. Paul had an "unwritten, *de facto* policy" (see Pl.'s Obj. at 3 [Doc. No. 17]), the

Court finds that this unwritten policy must be evaluated under the standards used to

analyze the sufficiency of a <u>Monell</u> custom claim.[1]

## 2.  Custom

In Lollie's Objections, he claims that he sufficiently alleged facts in his proposed

First Amended Complaint, demonstrating that the City of St. Paul had an unwritten

policy of deliberate indifference towards constitutional violations.  (See Pl.'s Obj. at 7

[Doc. No. 17].)  Because the Court concluded that Plaintiff's claim of an "unwritten

---

[1]     Insofar as Defendants argue that courts have rejected theories alleging the existence of a *de facto* policy under a <u>Monell</u> analysis (see Defs.' Resp. at 3 [Doc. No. 18]), the Court disagrees with Defendants' characterization of the case law.  Rather than flatly rejecting theories of *de facto* policies, courts have assessed these theories under a <u>Monell</u> "custom" analysis.  See <u>Peterson v. City of Fort Worth, Tex.</u>, 588 F.3d 838, 848–50 (5th Cir. 2009) (explaining that although the plaintiff alleged that the defendant police department had an "unwritten policy" of excessive force, the allegations of police misconduct did not suggest a pattern "so common and well-settled as to constitute a custom").

policy" must be analyzed like a <u>Monell</u> custom claim, the Court first outlines the

pleading requirements that Plaintiff must satisfy.

According to <u>Ware v. Jackson County</u>, Lollie must satisfy the following three

requirements to demonstrate that a municipal custom exists:

> (1) The existence of a continuing, widespread, persistent pattern of
> unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the
> governmental entity's policymaking officials after notice to the officials of
> that misconduct; and
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's
> custom, *i.e.*, [proof] that the custom was the moving force behind the
> constitutional violation.

<u>See</u> 150 F.3d 873, 880 (8th Cir. 1998) (quoting <u>Jane Doe A v. Special Sch. Dist.</u>, 901

F.2d 642, 646 (8th Cir. 1990)) (alterations in the original); <u>see also</u> <u>Mettler</u>, 165 F.3d at

1205.  To survive a motion to dismiss, Lollie need not prove each of these three prongs,

but Lollie must allege enough facts about each element of the claim to raise a right to

relief above the speculative level.

Magistrate Judge Bowbeer found, and the Court agrees, that Plaintiff's proposed

amendments fail to identify any other incidents "beyond Plaintiff's own that would

suggest the existence of a continuing, persistent, and widespread pattern of

unconstitutional misconduct."  (<u>See</u> MJ Order at 7 [Doc. No. 16].)  Thus, Lollie fails to

satisfy the first element required in a <u>Monell</u> custom claim.  <u>See</u> <u>Ware</u>, 150 F.3d at 880

(requiring a plaintiff to show the "existence of a continuing, widespread, persistent

pattern of unconstitutional misconduct").

Although Lollie baldly states that "repeated, past failures [of the City of St. Paul] to discipline" officers who violated individuals' constitutional rights, served as the moving force behind his specific incident, (see Pl.'s Obj. at 7 [Doc. No. 17]), Lollie fails to support this allegation with anything but conclusory statements.  Plaintiff claims that he does not merely restate boilerplate language of a Monell claim, and instead "identified a specific City custom – ineffectual Internal Affairs investigations *in the past*."  (See id.) (emphasis original).  The Court disagrees.

The proposed First Amended Complaint alleges only that "[t]he individually named Defendant Officers were acting pursuant to a policy, custom or practice of Defendant City of St. Paul of deliberate indifference towards the constitutional rights of civilians, and towards the violations of such rights by officers."  (See Irlbeck Aff., Ex. 1, "Proposed First Am. Compl." ¶ 22 [Doc. No. 10-1].)  The amendments say nothing about specific prior Internal Affairs investigations, or specific past failures to discipline delinquent officers.  Therefore, the proposed First Amended Complaint does not sufficiently allege a pattern of unconstitutional misconduct.  See McGautha v. Jackson Cnty., Mo., Collections Dept., 36 F.3d 53, 57 (8th Cir. 1994) (upholding jury verdict based on proper jury instruction that stated that "[p]roof of a single incident of unconstitutional activity is insufficient to establish a custom or practice"); Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis, 934 F.2d 929, 933 (8th Cir. 1991) (holding that the plaintiff failed to allege facts sufficient to establish a "continuing, widespread, persistent pattern of unconstitutional misconduct," because the "alleged incidents [were] relatively isolated"); Dick v. Watonwan Cnty., 738 F.2d 939, 942 (8th

10

Cir. 1984) (holding that the county's employees' decision did not constitute an official policy because isolated incidents are not enough to establish a policy or custom).

Rather, Plaintiff solely includes conclusory statements and boilerplate language referencing the existence of such a custom or policy.  (See id. ¶¶ 22, 31.)  Thus, like the plaintiff in D.B. v. Hargett, Plaintiff only seeks to add paragraphs to his Complaint that contain "boilerplate allegations asserting the mere generic elements of a Monell claim without any factual allegations specific to this case."  See No. 13-cv-2781 (MJD/LIB), 2014 WL 1371200, at *6 (D. Minn. Apr. 8, 2014) (finding that the plaintiff's proposed amendments to his Complaint were insufficient to state a Monell claim).

Furthermore, the Court notes that insofar as Plaintiff argues that a municipal custom was created by the City's failure to investigate and discipline the allegedly culpable officers in this case, the Court holds that Plaintiff does not plausibly allege that the City's custom was the "moving force" behind the alleged constitutional violations that took place on January 31, 2014.  As Defendants correctly explain, "[p]ost-injury wrongful conduct cannot be the moving force behind the injury at issue."  (See Defs.' Resp. at 8 [Doc. No. 18]); Mettler, 165 F.3d at 1205 (explaining that in order to state a plausible Monell custom claim, the plaintiff would need to show that the defendant "failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate [the victim's] rights with impunity."); see also Fancher v. Klann, No. 13-cv-435 (DSD/JJK), 2014 WL 4294960, at *4 (D. Minn. Aug 18, 2014) (holding that a subsequent Internal Affairs investigation cannot be the moving force for the incident that precipitated the

11

investigation); Tompkins v. Frost, 655 F. Supp. 468, 472 (E.D. Mich. 1987) (stating that "[w]rongful conduct after an injury cannot be the proximate cause of the same injury"). Therefore, Plaintiff also fails to plausibly allege facts relevant to the third element in a Monell custom claim.  See Ware, 150 F.3d at 880 (requiring a plaintiff to show that the municipality's custom was the "moving force" behind the constitutional violation).

Because Plaintiff fails to allege facts about prior incidents, and "an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom," Wedemeier v. City of Ballwin, Mo., 931 F.2d 24, 26 (8th Cir. 1991), the Court finds that Plaintiff's proposed amendments fail to satisfy the elements required to plead a Monell custom claim.  As the Court explained above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Accordingly, Lollie's proposed amendments are futile because they fail to state a claim to relief that would survive dismissal under Rule 12(b)(6).  See Hanten, 183 F.3d at 805 (explaining that a court need not accept as true wholly conclusory allegations).

### 3.  Post-Incident Ratification

Lollie also claims that he sufficiently alleged a Monell post-incident ratification claim in his proposed First Amended Complaint.  (See Pl.'s Obj. at 8 [Doc. No. 17].) Under a Monell post-incident ratification claim, a municipality may be held liable for a constitutional violation where an authorized policymaker approved the subordinate's unconstitutional decision and the basis for it.  See Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004) (explaining that "[t]o show ratification, a plaintiff must show that the

12

'authorized policymakers approve a subordinate's decision and the basis for it.'") Plaintiff concedes that the Eighth Circuit has not expressly recognized a post-incident ratification theory under Monell.  (See Pl.'s Obj. at 8 [Doc. No. 17].)  Nonetheless, Lollie argues that his novel Eighth Circuit claim meets the threshold pleading standard required by other circuits that have recognized the post-incident ratification theory.  (See id.)

In courts that have recognized a post-incident ratification theory, recognition of the theory has been limited to particular factual situations.  See Peterson v. City of Fort Worth,Tex., 588 F.3d 838, 848 (5th Cir. 2009) (explaining that the Fifth Circuit has limited the theory of ratification to "extreme factual situations") (internal citations omitted).  For instance, for claims brought in the Ninth Circuit, in order for a policymaker to ratify a subordinate's actions, "there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures."  See Maximo v. San Francisco Unified Sch. Dist., No. C 10-3533 JL, 2011 WL 1045292, at *7 (N.D. Cal. Mar. 21, 2011); see also Kanae v. Hodson, 294 F. Supp. 2d 1179, 1191 (D. Hawai'i 2003).

Lollie contends that the City of St. Paul ratified the Defendant officers' behavior through (1) "the quiet exoneration by the Internal Affairs unit" of the officers; and (2) a "public press conference held by the City to announce the exoneration of the officers." (See Pl.'s Obj. at 8 [Doc. No. 17].)  Thus, according to Plaintiff, the "something more" required by the case law was the post-Internal Affairs investigation press conference. (See id.)

13

The Court finds that the press conference announcing the exoneration of the officers was part and parcel of the City's alleged failure to discipline the officers for the January 31, 2014 incident.  The failure of policymakers to discipline subordinates after one isolated incident, and publicly report their findings from that incident, is not an adequate basis for municipal liability under Monell.  See Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989) (stating that the court "cannot hold that the failure of a [public entity] to discipline in a specific instance is an adequate basis for municipal liability under Monell"); Peterson, 588 F.3d at 848 (holding that there was no ratification of use of excessive force where the Chief of Police determined, after an investigation, that the officers complied with department policies).  Accordingly, even if the Eighth Circuit ultimately recognizes post-incident ratification Monell claims, Plaintiff fails to allege sufficient facts in his proposed First Amended Complaint to survive dismissal. Therefore, the Court finds that Lollie's proposed amendments are futile, and denies Plaintiff's Motion to Amend Complaint.

### 4.  Immateriality of Undue Delay, Bad Faith, Dilatory Motive, and Onerous Discovery

Finally, Lollie argues that because "[n]o undue delay, bad faith[,] or dilatory motive exists in this case," the Court should freely grant Plaintiff leave to amend his Complaint.  (See Pl.'s Obj. at 8 [Doc. No. 17].)  Plaintiff contends that "[d]uring the course of the litigation, certain facts have come to light that give support to Plaintiff's Monell claim."  (See id. at 9.)  Lollie explains that although new discovery would need to be completed, the new discovery would not be "onerous," as "much of the discoverable

information supporting the <u>Monell</u> claim would have already been discoverable under the existing constitutional claims." (<u>See</u> <u>id.</u> at 10.)

Although Plaintiff may be correct that no undue delay, bad faith, or dilatory motive to amend the Complaint exists in this case, the Court may still deny leave to amend if amendment is futile. <u>See</u> <u>Moses.com Sec., Inc.</u>, 406 F.3d at 1065. As the Court explained in detail above, in this case, amendment is futile because Plaintiff failed to propose amendments to his Complaint that would plausibly state a <u>Monell</u> claim, under the standard policy or custom theory or a novel post-ratification theory. Because amendment would be futile, the Court denies Plaintiff's Motion to Amend Complaint [Doc. No. 7], and overrules Plaintiff's Objections to Magistrate Judge Bowbeer's Order [Doc. No. 17].

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Objections to Magistrate Order [Doc. No. 17] are **OVERRULED**; and

2. The Court **DENIES** the Plaintiff's Motion to Amend Complaint [Doc. No. 7].

Dated:  May 27, 2015                                  s/Susan Richard Nelson
                                                      SUSAN RICHARD NELSON
                                                      United States District Judge